It is No. 16, 1897, XY, LLC v. ABS Global, Inc. Mr. O'Neill. Thank you, J.D. May it please the Court, Curt O'Neill, the appellant to XY, LLC. The Board's holding of obviousness of the claims on the Johnson and Renz combination cannot stand here because it rests entirely on an incorrect claim construction. In reaching that construction, the Board completely vitiated a key element or limitation of the determining step of Claim 1. The Board did that by making three distinct errors. No. 1, the Board declined to construe the claim according to the subjective preference of the practitioner. The Board said, page 11 of the proceeding, is simply not going to do that, despite the fact that the claim is explicitly expressed in the context of the desire of the practitioner who is sorting these cells. And this Court's jurisprudence is very clear that this type of subjective claiming is permitted as long as it does not render the claim indefinite. And there was no finding or suggestion here that it would have done so. The second clear error, and let me bring it back up, in reaching that conclusion, the Board said, we find that the phrase, the operative phrase, having a desired sex characteristic in the claim means that it has a gender. Well, that would eliminate the meaning of that claim and render it superfluous because the claim is talking about sperm cells, and to say that sperm cells have a gender is superfluous and redundant. And consequently, the Board's construction renders that language of the claim superfluous and having no meaning. The second plain error in the Board's construction is that it said that construing the claim, and in particular the sorting rate in the claim, to be limited to the sort rate for a single sex, either X or Y, would exclude from the scope of the claim the circumstance in which the practitioner was sorting and collecting both sexes. In other words, in that circumstance where the practitioner desired both sexes and was collecting them. That's a clear error by the Board. It's not at all consistent with this Court's claim construction jurisprudence. This is an open-ended, comprising claim, and so the mere fact that a practitioner desired to sort and collect both genders would not be outside the scope of the claim. In that case, and there is an example in the specification of this very thing, Example 3, in that case a practitioner would infringe this claim if either of the desired sex characteristics that were being sorted and collected were sorted at the minimum claim sort rate of 1,200 sorts per second. The fact that they were sorting and collecting both would not mean that that example would be excluded from the claim. And then the third major error made by the Board in this claim construction is that it said you weren't sufficiently explicit in claiming a sort rate that depended on the rate of sorting of one particular sex and not the aggregate number at the same time. The Board is erroneous there because it neglected to take into consideration that every single example in the specification in which a sort rate is expressed, the specification actually expresses that in terms of the rate of sorting of one particular sex, either X or Y. And consequently, the only construction of this claim that is consistent with this specification is a construction in which the discriminating step, D, of the claim is calling for a minimum sorting rate of sorting or discriminating the particular gender, whether it be X or Y. How does the specification explain how you achieve the sorting rate of 1,200 sorts per second? Your Honor, there are at least... It's the Moflo cytometer, right? It is a cytometer, correct. The Moflo cytometer. The Moflo cytometer, correct. And it specifically says, hey, somebody invented the Moflo cytometer and it can get up to 1,200 sorts per second. That's a real breakthrough in this part, right? I mean, that's what the spec says. It is an advance in the general art of flow cytometry. That announcement or the availability of that product did not enable... And so for the Moflo disclosed 1,200 sorts per second, do you know if the Moflo was sorting both X and Y cells together at 1,200 or was it just X cells at 1,200 sorts per second or Y cells only at 1,200 sorts per second? A couple of things. The Moflo itself was a commercial cell sorter that was not particular to the sorting of any cell type. These are used in hospitals and research institutions to sort cancer cells, blood cells, and so forth. So the availability of a commercial sorter that was generally faster in speed doesn't lead you to arrive at this invention. So, okay, but... But I wanted to say... And so it's just sorting any cells at 1,200 sorts per second. Well, not 1,200, okay? It depends on the cell type and the parameters at which you operate and what you're striving to achieve, and I think you've hit on one of the key errors the board made here. The board picked a statement about... Well, I'm just trying to figure out there's one time in this entire patent spec that uses the number 1,200, and that's in relation to this reference to this brand-new cytometer called the Moflo, right? Correct. And so now I'm trying to understand, well, what is it that it was specifically sorting out? Was it just one particular cell out of many, many different available cells and it was that one single cell at 1,200 sorts per second, or was it just all the cells that were in the mix and then they're being sorted? If I may, my answer would be in two parts. Number one, that passage in the specification is in the detailed description of the inventor's preferred embodiment, and in fact it is the description of the inventor's own work. I think you sort of hit on it. That is the Section 112 written description support for the claim, and what the inventors are describing there are their own achievements of sorting sperm cells at the claimed rate of 1,200 per second. The Board seemed to find that that was some sort of admission of prior art, that others had already achieved that. If that were the case, this would be an anticipated case. Suppose we were to disagree with you on the claim construction. Where are we? Your Honor, as laid out in our briefs, we still disagree that the obviousness conclusion was correct and is defensible as a matter of law, primarily for the reason I've just discussed. In order to get there, the Board had to say or find that the expression in column 7 of the patent that says the MoFlo has been used to achieve the sorting of sperm cells at 1,200 is actually the work of others, and that's not the case at all. I believe that's a finding of fact that has no substantial evidence to support it. In essence, it finds an admission of prior art in the inventors' own disclosure of their preferred embodiment. Again, this is in column 7 of the patent, deep into the description of preferred embodiment, where the inventors are saying, we have obtained a MoFlo sorter, commercially available. It is a relatively higher-speed sorter. In our hands, with the operating parameters, we have devised the chemical coordination of the sheath fluids and all the sorting fluids and all the other parameters. I'm focused on the Renz reference, which, I don't know, maybe I'm looking at this a little too superficially, but it looks like virtually a 102, if not an actual 102, because it uses the MoFlo cytometer, and it says, use the Johnson method with Renz's nozzle, and it can get 1,984 sorts per second, which meets your 1,200 sorts per second. And then it says, in example number 7, that it had successful results with that particular embodiment, MoFlo cytometer, Johnson method, 1,984 sorts per second. And then Renz says there's a strong, strong motive to improve the sort rate. Your Honor, it's neither anticipatory nor does it render it obvious. Under the correct claim construction, which is 1,200 sorts per second, Okay, but assuming you lose that. As I said, if I lose the claim construction, I still believe and would contend that there is no substantial evidence to support the board's broader finding, because the board's analysis How could that be when Renz is so close? How could that be that there's no substantial evidence? Well, so that's under XY's construction. Under XY's construction We're asking you, where are we if we reject your claim construction and affirm the board's construction? Under my construction And under those circumstances, Renz is very close, right? It is, well, if you go with the board's construction, then the claim requires 1,200 sorts per second in the aggregate, and Renz destroys that. If you go with XY's narrower construction, then Renz is short of that, and I believe I prevail here because there was no finding below that these claims are obvious. But to sum up, which was going back to Judge Dyke's question, if you lose on the claim construction, then there really isn't much left. I disagree, Your Honor. Okay, then what is that that is left? The reason is, as I said, in order to get there, the board had to use the inventor's own disclosure against them, principally the passage in Column 7 of the specification. Well, let's just focus on Renz. What is wrong with Renz in combination with Johnson? You mean as an anticipatory reference? No, as the 103 that the board relied on. It pointed to Renz. It pointed to all the important elements in Renz using Johnson's method to produce what appears to be your claim invention. What is wrong with that? I would respond this way, Your Honor. The appellee was pressed at oral argument for evidence to show that there was obviousness here under XY's interpretation, and they acknowledged they did not have the evidence. They did not have the art nor the teaching, and we lay that out. But you're talking about your construction prevailing. Well, the question we're asking you is where are we if your construction does not prevail, and we agree with the board's construction. You don't have anything. Renz clearly supports the board's obviousness finding, doesn't it? I come back to what I said, Your Honor. The board relied very heavily on its finding that the passage in the specification describing the inventor's own work was somehow prior art or the work of others. And finding an admission of prior art in the specification is a very high bar, very difficult to me. But the board did that to us repeatedly, and suggesting that somehow in the description of the preferred embodiment where the inventors are clearly- Of Renz's prior art, right? Renz's prior art, isn't it? It is. Yeah, it is. It is prior art. Did the board point to example seven of Renz? The board did point to example seven of Renz. But going to the point- Okay, let's hear from the other side, and we'll say we rebuttal. Mr. Horowitz. If you read it in context, it doesn't really say that at all. It says- Thank you, Your Honor. It may please the court. I'd like to focus on the claim construction dispute that's been the focus of the court's questions this morning. There's no dispute at this point that a sort occurs every single time a flow cytometer deflects an X cell in one direction or a Y cell in the other. There's also no dispute that at least sometimes those in the field are going to want to sort both X and Y cells simultaneously. So the only question is whether all of those undisputed sorts count as sorts towards the 1,200 sorts per second limitation of Claim 1. We think all of the evidence points in the same direction. Let's start with the claim language. The claim calls for a method that discriminates between cells having a desired sex characteristic. Well, the word between naturally suggests that there are two distinct types of cells, each of which is the object of the discriminating between step. Then you go to the specification. You see the disclosure of a method that acts to sort by sending X one way, Y the other, so that each can be separately packaged and dealt with, again contemplating simultaneous sorting of both X and Y. And beyond that, the board made a factual finding from the extrinsic evidence that when those in the field use the term sort rate generically, they mean to count both X and Y, and only when they say so explicitly do they depart from that convention. So in light of that factual finding, in light of the claim language and the specification, we think the board's construction is absolutely right. All sorts count as sorts. None are excluded. And as the discussion this morning makes clear, there's not much left to decide after the court confirms that the board's construction was right. By the way, XY's burden here is not to just show that the board was wrong or that the board's construction wasn't the best construction. This is an IPR involving an unexpired patent, so the burden on appeal is to show that the board was not just wrong but unreasonable, that it's unreasonably narrow. XY can't meet that. There's at least four distinct hurdles in the claim alone that XY cannot clear. There's the word between, which I've already mentioned. As the court is aware, XY's strategy with the word between was simply to omit the word in each quotation of the claim language in the argument section of its brief. But the word is there, and it has significance, and its significance is to count both X and Y. Then there's the generic disclosure of a sort rate, as I mentioned. In light of the board's finding, that suggests count both X and Y. On top of that, there's an undisputed word, sort, meaning all deflections. And even after all of that, the desired sex characteristic is expressed in an indefinite Article A, which, as a rule, subject to extremely limited exceptions that this court explained involving graphic systems, means one or more. So discriminating between cells having one or more desired sex characteristics necessarily would be understood by those in the field to mean either X or Y. The gray brief, I believe, pointed to an example in the specification, example three, where it says that in that example, they were getting these very, very high sort rates for each sex. So does that support the idea that what this claim is really driving at? I mean, I find the text of the claim a little garbled. I could read it a lot of different ways, but getting to that example three, what do you have to say about the gray brief's characterization of it? Sure. So respectfully, Your Honor, first, to the extent that you think that the claim is garbled and is ambiguous, I think that actually supports the decision below insofar as we're at a broadest reasonable interpretation and correct interpretation under Phillips. But putting that to one side, as to the speed accomplished in example three, actually example three is among the very slowest of sort rates. You have to do the calculation. It's over several hours, and they're only in the 100,000s of range. So if you do the math backwards, we're talking about sort rates in the 100 to 200 range per second of each type. So they're not even close to the claimed sort rate. As Your Honor indicated during XY's presentation, the only disclosure in the specification that gets anywhere close to 1,200 is actually in column seven, talking about the Moflow. And that generic disclosure would be understood by those in the art in light of the board's factual finding about how these terms are used to both X and Y. But that still raises the question, why did they say of each sex in example three, which is the argument in the gray brief that they're really focused on? And I think the answer is straightforward. The generic disclosure in column seven consisted with what those in the field would expect. Then you get to the working examples, none of which, by the way, meet the claimed invention on either side's construction. But you get to the working examples. In example one, the inventors are sorting just X. And that's a departure from the conventional understanding of how the sorting machine would work if you just set a sort rate. So it was important for the inventors to say, when we say 500 cells, we mean 500 specifically X cells. Now having set that in example one, example three, which is the only other example that involves sorting at all, really the rest of them are focused on low dose artificial insemination techniques, which is what you might have thought the invention was if you didn't read the claims. But anyway, you get to example three, and they're specifying a sort rate again. Now they're sorting both X and Y cells. And given that they had expressed that they were just sorting only X, it was important to make clear to the reader, we're sorting both at this point. Again, consistent with the way most people would understand the sperm sorter to work. What about the other side's argument that the board impermissibly used its own detailed description of the present invention against it? I think this goes back to that one section on column seven. So the first thing to say is that I don't think it matters one way or another, because on the board's construction, there's no dispute that Renz accomplishes the claimed sorting rate. 1,984 sorts per second is at least about 1,200 sorts per second. So whatever the board is doing with respect to column seven, if it's got the construction right, then Renz or Johnson renders obvious the claim. And counsel for the other side was asked many times, is there any daylight after that construction, and kept returning to XY's preferred construction. In terms of what the board is doing there, if you look at the disclosure in that column, there's no ambiguity about who has accomplished the increased sorting speeds. What it says is these flow cytometers, referring to the MoFlo that had just been introduced in the prior sentence, these flow cytometers have increased sorting speeds extraordinarily. That's what it says. And to the extent that there's any ambiguity whatsoever about what the inventors thought about the MoFlo, you can look at the lead inventor article from 2003, a few years later, in which he's providing a retrospective on developments in the field. And when he talks about high-speed sorting, he doesn't take credit for that himself. Instead, he points to Cynomation's MoFlo, the machine in column seven, and also, by the way, Renz's nozzle, which supports the board's obviousness finding. And on top of that, just to be clear, he wasn't being modest. He does take credit in more or less the very next sentence. All this is on page 39 of 07 of the Joint Appendix. He does take credit for having made the advancements in low-dose artificial insemination protocols, which, again, if you look at the working examples, are the focus of all of them. All of those working examples involve dosages that are far below what would have been standard in the field at the time. Usually, people would use 10 million cells per straw per unit for insemination, and all the examples are much lower in some, you know, 50,000, 100,000 cells. So I don't think there's any doubt that the inventors had credited MoFlo with having increased sorting speeds, but as I say, it doesn't matter one way or another, because in the board's construction, Renz has the claimed sorting rate. Okay. Anything else for Mr. Horowitz? Thank you, Mr. Horowitz. The difference in the Delphix patent is... Mr. O'Neill. I'll be very brief. Thank you. Obviously, the claim construction is very important to the outcome of this case. I laid out three distinct reasons why the board's construction was wrong and impermissibly overbroad. In each case, the board violating one of this court's basic tenets of claim construction. Number one, vitiating a claim limitation entirely, that claim limitation being having a desired sex characteristic. In doing so, the board said, we're not going to construe it according to the desire of the practitioner, even though the claim explicitly and undeniably says that. Number two, the board applied some outer space rule of claim construction in somehow ruling that even on this comprising claim, that sorting and collecting both sexes at the same time is somehow excluded under XY's interpretation. That is obviously not correct. And number three, the third major error by the board is in not giving due respect for the specification. This court has very recently, in the case of N. Ray Smith International, emphasized that under the broadest reasonable interpretation rubric, we are to be finding the claim construction that is consistent with the specification. The board did not do that. The board said that a droplet deflection is described as a sort in the specification. That is true. We don't deny that. What the board missed was that a droplet discrimination of a desired sex, either X or Y, according to what's desired by the practitioner, is how the specification describes and characterizes sort rates for this invention. As I said, and it's not disputed by my opponent, every example in the specification in which a sorting rate is expressed, it's done so according to the number of sorts per second of a single sex. Do any of those examples show a sort rate of 1,200 for just a particular sex per second? Your Honor, that sentence talks about 1,200 and 500. The 500 is then later explained in further detail in example one, 500 X cells per second. No, I'm trying to ask something more specific. All your examples where you're saying, hey, look, we're doing sorts per second for a particular sex. Do any of those examples have a sort per second for a single sex of 1,200 or more? The other side just told me example three has much less than 1,200 per second. Well, some are less. And then some are more? Well, in the specific example you mentioned, the 1,200 sorts per second is mentioned in the same sentence that refers the reader to the 500 sorts per second. No, I'm talking about your examples. Forget about column seven. I'm talking about your examples. In the examples, some… Is there any example? Okay, the answer is no. There is no example in the specification in which the sorting rate is expressed with reference to the cumulative sort rate for both. No, that's not my question. Okay, do I need to repeat my question? In the examples, Your Honor, that lay out… In the specification. Yes. The labeled examples, the 1,200 is not there. Okay. All of them are less than 1,200 sorts per second for a particular sex. In the detailed examples that are labeled as… Is it yes or no? Is it yes or no? It's no. Okay, thank you. The ones that are in the specification. Yes, right? Okay, thank you. Okay, thank you. That concludes the argument for this case. Thank you.